UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ANN COUGHLIN**,   Case No. 1:13 CV 895

      Plaintiff,

v.   MEMORANDUM OPINION AND ORDER

**COMMISSIONER OF SOCIAL SECURITY**,

      Defendant.   Magistrate Judge James R. Knepp II

### INTRODUCTION

Plaintiff Ann Coughlin seeks judicial review of Defendant Commissioner of Social Security's decision to deny Disability Insurance Benefits (DIB) and supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 405(g) and 1383(c). The parties consented to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 13). For the reasons given below, the Court affirms the Commissioner's decision denying benefits.

### PROCEDURAL BACKGROUND

On July 27, 2009, Plaintiff filed applications for DIB and SSI alleging a disability onset date of June 18, 2007. (Tr. 158, 160). Her claims were denied initially (Tr. 93, 96) and on reconsideration (Tr. 101, 107). Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). (Tr. 114). On September 7, 2011, Plaintiff (represented by counsel) and a vocational expert (VE) testified at the hearing, after which the ALJ found Plaintiff not disabled. (Tr.18-36). On February 27, 2013, the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981,

416.1455, 1481. On April 21, 2013, Plaintiff filed the instant case. (Doc. 1).

## FACTUAL BACKGROUND[1]

*Personal and Vocational History*

Born November 4, 1949, Plaintiff was 61 years old at the time of the ALJ hearing. (Tr. 36, 42, 57). Plaintiff completed high school and two years of college. (Tr. 42-43). Previously, she worked as a billing clerk, bookkeeper, cashier, facility manager, secretary, receptionist, sales person, and teller. (Tr. 80-81, 207). Among her reasons for leaving past jobs, Plaintiff reported memory loss, disputes with her employer, and an argument with a coworker. (Tr. 59, 62-63). Plaintiff claimed loss of balance, loss of memory, emotional instability, asthma, incontinence, and regular pain throughout her body limited her ability to work. (Tr. 44-70).

With regard to activities of daily living, Plaintiff shopped for groceries, dusted, folded laundry, cleaned the bathroom, exercised lightly, cared for her disabled husband, and read. (Tr. 24, 53-57, 75, 79). Plaintiff also cared for two dependent grandchildren who assisted her around the house. (Tr. 57).

*Medical Evidence Before the ALJ*

Plaintiff challenges only the ALJ's conclusions regarding her mental limitations (Doc. 16) and therefore waives any claims about the determinations of her physical impairments. *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010) (noting failure to raise a claim in merits brief constitutes waiver). Specifically, Plaintiff challenges whether the ALJ met her burden at step two of the sequential evaluation process, alleging the ALJ erred in not classifying Plaintiff's

---

1. The Commissioner's brief on the merits contains numerous incorrect citations to the record. (*See* Doc. 17). Please review this Court's order requiring the parties to "cite, by exact and specific transcript page number, the page relating" the facts proposed. (Doc. 6). Failure to cite properly to the record is not only a violation of this Court's order but prevents the Court from timely and efficiently reviewing claims.

mental limitations as severe impairments. (Doc. 16, at 12). Plaintiff further alleges the ALJ failed to include any "psychologically-based limitations into the formulation" of Plaintiff's residual functional capacity (RFC). (Doc. 16, at 12). Finally, Plaintiff argues new material evidence, including diagnoses of depression, bipolar disorder, adjustment disorder, obsessive compulsive disorder (OCD), mood disorder, and post-traumatic stress disorder (PTSD) demonstrate a severe mental impairment and warrant remand under sentence six of 42 U.S.C. § 405(g). (Doc. 16, at 12, 17, 20). Accordingly, the Court addresses the record evidence only to the extent it is relevant to Plaintiff's alleged mental impairment.

Plaintiff testified that prior to her alleged onset date of June 18, 2007, she had been prescribed medication for anxiety, stress, and mood swings. (Tr. 76-77). The record reveals that from the alleged onset date through August 4, 2011, Plaintiff sought treatment for anxiety and depression from her primary care physician at North Coast Health Ministry (North Coast), but was never treated by a mental health professional. (Tr. 260-62, 431-44, 659-68).

On October 27, 2008, Plaintiff's primary care physician diagnosed her with depression, not otherwise specified. (Tr. 262). In June 2009, treatment notes revealed Plaintiff had a normal mood and affect, full orientation, and intact memory (Tr. 298); and in July 2009, Plaintiff's depression was described as mild (Tr. 337). On September 3, 2009, Plaintiff reported "sig[nificant] memory problems." (Tr. 441-442). On January 4, 2010, Plaintiff complained of continued memory loss (Tr. 439), and in February 2009, her physician prescribed Paxil. (Tr. 259-60). As of June 2009, Plaintiff took Paxil and Trazadone and continued to take these medications at the same dosage until August 2011. (Tr. 373-75, 486, 492, 576, 627). Later in 2010, treatment notes revealed Plaintiff was alert and fully oriented, and had no hallucinations or delusions. (Tr. 463, 576-77).

On January 2, 2010, state agency physician Paul Tangemen, Ph.D., noted there was

3

insufficient mental health information to complete a Psychiatric Review Technique due to Plaintiff missing two scheduled psychiatric consultative examinations. (Tr. 342, 354).

Throughout 2010 and 2011, various physicians described Plaintiff as pleasant and cooperative. (Tr. 374, 377, 427, 434, 478, 591, 621, 623, 625, 627, 647, 678, 680, 682, 692, 696, 704, 716, 728, 734, 736). In September 2010, although Plaintiff had symptoms of depression, she had no anxiety, no sleep disturbance, no memory loss, no disorientation, no inattention, and no major psychiatric illness. (Tr. 472, 586, 590).

On July 21, 2011, Plaintiff was referred to the Center for Families and Children (CFC) by her grandchildren's case worker, where she reported a history of abuse by her father and two husbands and depression since childhood. (Tr. 506-510, 523). Social worker Ginny Jones, LISW, initially interviewed Plaintiff and noted she was well-groomed, and had good eye contact, spontaneous and talkative speech, psychomotor agitation, tangential and circumstantial thought process, normal thought content, normal perception, full orientation, good concentration, average intellectual capacity, average fund of knowledge, and fair judgment. (Tr. 516-18). On that same date, Ms. Jones found Bipolar II, OCD, and PTSD "may be a focus of clinical attention." (Tr. 518). At an August 4, 2011 follow-up visit, Plaintiff complained of depression, anxiety, and obsessive behaviors and said she did not want to get out of bed. (Tr. 519).

In the period between the ALJ hearing and subsequent decision (September to October 2011), examination treatment notes from her rheumatologist revealed no sleep disturbance, no mood disorder, and no recent psychosocial stressors. (Tr. 702, 715). Plaintiff also was fully alert and oriented, and had good recall of recent and remote events. (Tr. 704, 717).

*ALJ Hearing*

At the ALJ hearing on September 7, 2011, Plaintiff testified she could not work because of

physical limitations and memory problems. (Tr. 43-44, 59). In addition, Plaintiff said she had a "horrible temper." (Tr. 50). For example, the slightest thing put her into a "rage," such as improper placement of dinnerware and other household items. (Tr. 50). Plaintiff further stated that her current medication worked to control mood swings and anger, and while she was still a "little looney" on occasion, she was "not throwing things against the wall anymore or breaking furniture." (Tr. 50). When the ALJ inquired why Plaintiff missed two consultative psychological exams set up by the Social Security Administration, Plaintiff said she was advised not to go by a group called Freedom Disability. (Tr. 52). However, this conflicted with Plaintiff's March 22, 2010, claim that she was unable to attend those exams due to "transportation problems." (Tr. 99).

*ALJ Decision*

On October 21, 2011, the ALJ found Plaintiff had the severe impairments of chronic obstructive pulmonary disease (COPD), coronary artery disease, diabetes mellitus, asthma, fibromyositis, and sciatica. (Tr. 23). However, the ALJ concluded these severe impairments did not meet or medically equal a listing. (Tr. 26). The ALJ also found Plaintiff's anxiety disorder and other mental impairments of record were not severe because they caused no more than a minimal limitation in her ability to perform basic mental work-related activities. (Tr. 24-25). The ALJ then determined Plaintiff had the RFC to perform light work, except she should avoid concentrated exposure to extreme temperatures, fumes, odors, dusts, gases, and poor ventilation. (Tr. 26). The ALJ found Plaintiff capable of performing past relevant work as a billing clerk, bookkeeper, cashier, secretary, receptionist, sales person, and teller. (Tr. 30). Thus, she found Plaintiff not disabled. (Tr. 30-31). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 3).

*Evidence Submitted to Appeals Council*

On September 2, 2011, Plaintiff returned to CFC and treated with nurse practitioner Kristin Hanvey, CNP, CCIT, CTP. (Tr. 778). Plaintiff reported severe rage, anger, and anxiety issues, and indicated Paxil and Abilify no longer helped. (Tr. 778). On examination, Plaintiff had an angry and irritable mood, but full affect, and clear, linear, and organized thought process and speech. (Tr. 778). Plaintiff denied paranoia and hallucinations. (Tr. 778). Ms. Hanvey discontinued Trazadone and Abilify, continued Paxil, and added Seroquel. (Tr. 778).

On September 8, 2011, Plaintiff reported having a "wonderful weekend," with increased sleep and decreased irritability and anger. (Tr. 776). An examination revealed a clear, "less edgy" thought process, normal perception, a less labile and more even mood, normal cogitation, and normal insight and judgment. (Tr. 776). Plaintiff denied suicidal and homicidal ideation. (Tr. 776). Plaintiff's current diagnosis was bipolar disorder. (Tr. 776).

On September 27, 2011, despite reporting "periods of irritability", Plaintiff was pleasant, talkative, and animated, and was taking care of her husband after he suffered a heart attack. (Tr. 774). An examination revealed normal thought content, normal perception, unchanged mood, normal behavior, normal cognition, and fair insight and judgment. (Tr. 774). Plaintiff also denied suicidal and homicidal ideation. (Tr. 774). Plaintiff continued Seroquel as directed. (Tr. 774).

On October 6, 2011, Plaintiff reported she was doing well – "better overall" – and that her symptoms temporarily increased when she stopped Paxil but improved when she restarted it. (Tr. 773). An examination revealed that Plaintiff had a clean appearance, clear and linear thought process, normal thought content, normal perception, improved mood, full affect, normal behavior, normal cognition, and normal insight and judgment. (Tr. 773). On November 17, 2011, the first appointment since the ALJ issued her October 2011 decision, Plaintiff reported stress because her

grandchild was acting out and Seroquel was not working as well. (Tr. 771). Plaintiff also reported a sad mood, anxiousness, sleeplessness, and irritability. (Tr. 771). An examination revealed a clean appearance, clear and linear thought process, normal perception, sad mood, anxious affect, normal behavior, normal cognition, and fair insight and judgment. (Tr. 771). Ms. Hanvey recommended Lithium and continued Seroquel. (Tr. 771). On December 2, 2011, Plaintiff thought Lithium was not working, so Ms. Hanvey discontinued it. (Tr. 770). An examination revealed a normal appearance, normal thought process, normal thought content, normal perception, irritable mood, full affect, normal behavior, normal cognition, and normal insight and judgment. (Tr. 770). Ms. Hanvey noted Plaintiff would need further assessment by Dr. Hunt for medication management. (Tr. 770).

On December 5, 2011, Plaintiff had her first of two visits with Dr. Hunt, who reported Plaintiff was making minimal progress. (Tr. 769). Although Plaintiff had an anxious mood and thought content, she had fluent and mildly circumstantial speech, normal perception, intact cognition, and good insight and judgment. (Tr. 769). Dr. Hunt discontinued Seroquel and prescribed a trial of Lamictol. (Tr. 769). On January 9, 2012, Dr. Hunt noted that Plaintiff had made some progress. (Tr. 768). Although Plaintiff had some anxiety and depression, she had fluent and mildly circumstantial thought process/speech, no suicidal or homicidal ideation, cooperative behavior, intact recent memory, good insight and judgment, and no hallucinations or delusions. (Tr. 768). Dr. Hunt diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and personality disorder, not otherwise specified (histrionic diagnosis). (Tr. 768).

On February 15, 2012, Dr. Hunt completed a form medical source statement evaluating Plaintiff's functioning in 21 work-related categories. (Tr. 782-83). Dr. Hunt rated Plaintiff as fair or good in 15 of the 21 categories. (Tr. 782-83). Dr. Hunt checked boxes indicating that Plaintiff

7

had a poor ability to deal with the public; relate to co-workers; interact with supervisors; work in proximity to others without being unduly distracted or distracting; deal with stress; and complete a normal workday and work week without interruption from psychologically based symptoms and perform at a consistent pace without unreasonable number and length of rest periods. (Tr. 782). Dr. Hunt noted that Plaintiff had mood swings, frustration, agitation, and poor impulse control with social situations. (Tr. 783).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

> 1. Was the claimant engaged in a substantial gainful activity?
>
> 2. Did the claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?
>
> 3. Does the severe impairment meet one of the listed impairments?
>
> 4. What is claimant's residual functional capacity and can he perform past relevant work?
>
> 5. Can the claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in steps one through four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* A claimant is only determined to be disabled if she satisfies each element of the analysis, including inability to do other work, and meets the duration requirements. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff alleges the ALJ erred at step two of the sequential evaluation process by failing to find Plaintiff had the severe psychological impairments of depression, bipolar disorder, adjustment disorder, OCD, mood disorder, and PTSD. (Doc 16, at 12, 17). Consequently, Plaintiff argues the

9

ALJ's RFC determination was improper for failing to explicitly account for mental limitations. (Doc. 16, at 17). Plaintiff further alleges that treatment notes, opinions, and diagnostic tests from CFC and Drs. Hunt, and Brill constituted new and material evidence regarding Plaintiff's mental impairments, warranting remand. (Doc. 16, at 18, 20).

*Severe Impairment*

Plaintiff's first argument stems from the ALJ's obligation at step two of the disability analysis to determine whether a claimant suffers a "severe" impairment – one which substantially limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576-77 (6th Cir. 2009). But the regulations do not require the ALJ to designate each impairment as "severe" or "non-severe"; rather, the determination at step two is merely a threshold inquiry. 20 C.F.R. § 404.1520(a)(4)(ii). "After an ALJ makes a finding of severity as to even one impairment, the ALJ 'must consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe.'" *Nejat*, 359 F. App'x at 576 (quoting SSR 96-8p, 1996 WL 374184, at *5). In other words, if a claimant has at least one severe impairment, the ALJ must continue the disability evaluation and consider all the limitations caused by the claimant's impairments, severe or not. And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the failure to find additional severe impairments does not constitute reversible error. *Nejat*, 359 F. App'x at 577 (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

Here, Plaintiff contends the ALJ failed to recognize Plaintiff's mental impairments were severe at step two of the evaluation. (Doc. 16). However, the ALJ did not err at step two because she found Plaintiff suffered from six severe physical impairments – COPD, coronary artery

disease, diabetes mellitus, asthma, fibromyositis, and sciatica – and assessed Plaintiff's mental limitations in combination. (Tr. at 23). Therefore, reversible error did not occur because the ALJ considered the limitations and restrictions imposed by all of Plaintiff's limitations, including those mental limitations she found non-severe.

Indeed, the ALJ discussed Plaintiff's mental limitations in her step two analysis by considering "the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1)." (Tr. 24-25). These four broad functional areas (daily living, social functioning, concentration/persistence/pace, and episodes of decompensation) are known as the "paragraph B" criteria. While the criteria alone cannot be used in an RFC determination, the ALJ incorporated the criteria by prefacing her RFC assessment as reflecting "the degree of limitation the [ALJ] has found in the 'paragraph B' mental function analysis." (Tr. 25).

In doing so, the ALJ appropriately found Plaintiff's mental impairments evoked only mild limitations. (Tr. 25). 20 C.F.R. § 416.945(a)(1) (a claimant's RFC is an assessment of "the most [s]he can still do despite [her] limitations."). For example, the ALJ discussed Plaintiff's ability to engage in daily activities "in an appropriate and effective manner on an independent and sustained basis" and interact with others independently, appropriately, and effectively on a sustained basis. (Tr. 25-26). The ALJ also noted that while Plaintiff reported memory loss on occasion, treatment records revealed the absence or denial of this symptom on numerous occasions. (Tr. 24-25). Further, the ALJ noted Plaintiff's symptoms of memory loss, temper outbursts, and mood swings when determining Plaintiff's RFC. (Tr. 26-27). However, the ALJ found Plaintiff was mentally capable of performing work consistent with the RFC because Plaintiff took care of her grandchildren and her husband, which was emotionally more demanding and stressful than simple

11

work. (Tr. 27). The ALJ also called Plaintiff's reliability into question with respect to inconsistent statements regarding why she did not attend psychological consultive examinations. (Tr. 27); § 416.929 (An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence). Thus, the ALJ appropriately explained why Plaintiff's mild mental impairments did not warrant additional mental limitations.

The ALJ's RFC assessment was supported by substantial evidence. Indeed, during the relevant period, Plaintiff took medication prescribed by her primary care physician at the same dosage. (Tr. 373, 486, 492, 576, 627). Moreover, treatment notes reflected mild depression and generally normal examination findings secondary to her physical impairments. (Tr. 298, 337, 463, 472, 576-77, 586, 590, 702, 704, 715, 717). In addition, although Plaintiff reported anger and irritability, doctors consistently described her as pleasant and cooperative. (Tr. 374, 377, 427, 434, 478, 591, 621, 623, 625, 627, 647, 678, 680, 682, 692, 696, 704, 716, 728, 734, 736). Plaintiff also testified her medication worked to control her mood swings and anger. (Tr. 50).

Important here, Plaintiff relies exclusively on medical evidence not before the ALJ. (Doc. 16, at 12-17). In doing so, Plaintiff fails to acknowledge that "evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)). Moreover, while Plaintiff was diagnosed with some mental impairments during the relevant period, "the mere diagnosis of an impairment does not indicate the severity of that impairment." *Mikesell v. Astrue*, 2012 WL 1288733 , *adopted by* 2012 WL 1288724 (N.D. Ohio 2012) (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)). Accordingly, because the ALJ found Plaintiff suffered from severe physical impairments

and considered Plaintiff's mental limitations in the remaining steps of the disability determination, any failure to find additional severe impairments does not constitute reversible error. *See Nejat*, 359 F. App'x at 577. In addition, her RFC is supported by substantial evidence.

*Sentence Six Remand*

Plaintiff argues new evidence presented to the Appeals Council warrants a sentence six remand pursuant to 42 U.S.C. § 405(g).

A claimant must establish two prerequisites before a district court may order a sentence six remand for the taking of additional evidence. *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 484 (6th Cir. 2001). In particular, a claimant must show: (i) the evidence at issue is both "new" and "material"; and (ii) there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see also Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir.1996). The party seeking a remand bears the burden of showing that these two requirements are met. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

The Sixth Circuit explains "evidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding." *Hollon*, 447 F.3d at 483-84 (citing *Foster*, 279 F.3d at 357). Such evidence, in turn, is deemed "material" if "there is a probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with new evidence." *Foster*, 279 F.3d at 357. To establish "good cause" for failure to incorporate the evidence, the plaintiff must demonstrate "a reasonable justification for the failure to acquire and present evidence before the ALJ." *Id.*

Plaintiff presented medical records to the Appeals Council from three different sources. Some of the records pre-date the ALJ hearing on September 7, 2011; some post-date the ALJ's hearing but pre-date her decision on October 21, 2011; and some post-date the ALJ decision by

13

several months. Of those records Plaintiff provided office visit records from Dr. Brill dated September 14, 2011 through December 12, 2011, which generally reflected appointments related to her physical impairments. (Tr. 685-763). Second, Plaintiff provided treatment notes from CFC dated September 8, 2011 through January 20, 2012. (Tr. 765-79). Third, Plaintiff provided a mental assessment from Dr. Hunt dated February 15, 2012. (Tr. 781-83).

Plaintiff's only explanation for failing to provide evidence either pre-dating the ALJ hearing or post-dating the ALJ hearing but pre-dating the ALJ's decision, is "that the late production of evidence is apparent, since the records were not in existence at the time of the hearing, or were not yet available due to the closeness of the hearing." (Doc. 16, at 19). However, this explanation does not cure Plaintiff's failure to secure the *existing* or *ongoing* treatment records and proffer them to the ALJ before she issued her decision. Indeed, when the ALJ asked Plaintiff's counsel if she had any additional evidence to submit, Plaintiff's counsel replied, "No." (Tr. 39-40). Veritably, Plaintiff's counsel also did not ask the ALJ to keep the record open to submit additional documents despite ongoing treatment with CFC and Dr. Brill at that time. Therefore, evidence pre-dating the ALJ hearing and evidence post-dating the hearing and pre-dating the ALJ decision cannot be considered "new" under sentence six. *Finkelstein v. Sullivan*, 496 U.S. 617, 626 (1990) ("The sixth sentence of 405(g) plainly describes . . . evidence . . . not in existence or available to the claimant at the time of the administrative proceeding…").

Nevertheless, none of the evidence Plaintiff submitted to the Appeals Council is material. Evidence is not material where Plaintiff "has not established that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with this evidence." *Foster v. Halter*, 279 F.3d 348, 358 (6th Cir. 2001).

At the outset, Dr. Brill's office notes only reflect treatment for Plaintiff's physical

14

impairments; therefore, they are not relevant or material to Plaintiff's arguments on review. Furthermore, the evidence pre-dating the ALJ's decision is not material because they contain mostly cumulative information, and do not show a marked departure from previous examinations. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 654 (6th Cir. 2009) ("The ALJ properly rejected this evidence as cumulative and [therefore] not material . . . ."); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (additional evidence is not material where it shows "no marked departure from previous examinations"). Like the evidence already before the ALJ, the additional medical records from September and October 2011 merely reveal that Plaintiff continued to make improvements. (Tr. 702, 704, 715, 773, 774, 776, 778). Indeed, Plaintiff reported a decrease in symptoms and said she was doing better overall. (Tr. 773, 774, 776, 778).

Next, the evidence post-dating the ALJ decision is not material because it does not relate to the time period at issue – the alleged onset date through the date of the ALJ's decision. *Welton v. Comm'r* of Soc. Sec., 2012 WL 43052, at *14 (N.D. Ohio). The remaining records post-date the ALJ's decision by several months and include treatment notes by Dr. Hunt, who began treating Plaintiff two months after the ALJ decision after an increase in Plaintiff's symptoms. (Tr. 768-78). *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("The rest of the material contained in the additional evidence pertains to a time outside the scope of our inquiry."); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (finding evidence of plaintiff's condition dated outside of the relevant period was not material). Therefore, Dr. Hunt's treatment notes and opinion reflect Plaintiff's existing mental condition deteriorated well after the relevant period. Thus, the appropriate remedy here is not remand; rather, Plaintiff should initiate a "new claim for benefits if her condition has indeed changed." *Welton*, 2012 WL 43052, at *14; *see Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988).

## CONCLUSION

Following review of the arguments presented, the record, and applicable law, the Court finds the ALJ applied and followed the correct legal standards and her decision is supported by substantial evidence. Therefore, the Court affirms the Commissioner's decision denying benefits.

IT IS SO ORDERED.

s/James R. Knepp, II<br>
United States Magistrate Judge